SILVER FLEET MOTOR EXPRESS, Inc., et al. v. BILBREY et al.
—120 S. W. (2d) 997.

Eastern Section. March 19, 1938.

Petition for Certiorari denied by Supreme Court, October 8, 1938.

Lynch, Phillips, Lynch & Hall, of Chattanooga, for plaintiffs in error.

Whitaker & Whitaker, W. R. Ferguson, and Carlisle G. Milligan, all of Chattanooga, for defendants in error.

PORTRUM, J. The record consists of three suits, each suing for damages for personal injuries, loss of services, et cetera, and injury to an automobile, predicated upon the same facts growing out of an automobile collision in the city of Chattanooga. Two counts of the declaration are involved, a common law count and a count based upon an ordinance prohibiting the reversing or backing of vehicles without observing prescribed precautions. The recovery granted the three plaintiffs aggregate the sum of $4,163. The truck of The Silver Fleet Motor Express, driven by the defendant R. L. Gallager, in an attempt to park backed into a Chevrolet automobile in which the plaintiffs were riding, denting in the right front door, jarring up the occupants and causing the injuries. The principal defense is that at the time of the accident the driver of the truck owned by The Silver Fleet Motor Express was upon a mission of his own, and not in the service of the master, and that no liability arises against the master upon the principle of respondeat superior.

On Sunday, May 24, 1936, about 7:30 P. M., the plaintiff Hollis Bilbrey, accompanied by his guests, the other plaintiffs, was driving his 1935 Chevrolet sedan upon Main Street approaching the intersection of Kyle Street in the city of Chattanooga, and his attention being attracted by the action of two lady pedestrians at the intersection, brought his car under control, and entering upon the intersection and turning into Kyle Street, he was confronted by a truck backing towards him and he brought his car to a stop. This intersection was obscured by high banks and undergrowth and as a result he was unable to see the truck upon Kyle Street until he had entered into Kyle Street. One of the lady pedestrians was ex-' cited and running, attempting to warn the driver of the truck, not of the approaching car, but she saw the truck backing into a ditch and was apprehensive that the truck would turn over. The driver of the truck was partly within the truck and partly upon the running board; he was standing with one foot upon the running board, attempting to see to the rear, and operate the truck in this position. The truck was a closed one with the two rear doors standing open and the tail gate let down and extending in the rear parallel with the bed of the truck. He was unable to control the movement of the truck and as a result the tail gate collided with the standing Chevrolet automobile, denting in the right front door of the car as above described. The truck driver was accompanied by a companion driving with him in the truck as his guest. The driver was intoxicated and perhaps his companion was too, for each refused to tell the officers the one that was driving the truck and possessed a driver's license, and the officers arrested both of them.

Gallager had been employed by The Silver Fleet Motor Express since February, 1936. Some time in that month The Silver Fleet Motor Express bought out the K. & A. Freight Lines, and Gallager having been in the employ of the latter was retained by The Silver Fleet as a driver.

The Silver Fleet Motor Express, called for convenience The Silver Fleet, was engaged in the collection and distribution of local freight and so-called express in the City of Chattanooga; this operation required the use of several delivery trucks, and it had no garage at its place of business to store the trucks, so if the trucks were left upon the business lot or street adjacent to the lot after business hours, pilferage took place, and to prevent this it was the practice of The Silver Fleet to permit the driver of a truck to take it home with him and park the truck at his residence after working hours. Each night the driver took the truck home and returned with it the next morning, and upon holidays and Sundays the driver kept the truck parked at his home until the succeeding working day when he returned the truck, and resumed his employment.

The evidence shows that the driver was specifically instructed not

to use the truck after taking it to his home, nor to permit its use by anyone for any purpose, and the driver testified that these were his instructions.

The manager of The Silver Fleet details the purpose of the company in permitting the truck to be taken to the home of the driver, and testifies as to the instructions given the driver, and his testimony is in no way impeached. The instructions are not suspicious upon their face and appear to the court to be entirely reasonable instructions and what one would expect under this state of circumstances. The policy of the company in using the streets of the city adjacent to the homes of its drivers may be objectionable from a public standpoint, and may afford an opportunity and a temptation on the part of the driver to use the truck in his own affairs, but these questions are not pertinent to the present inquiry, as the court views it, and many employees intrusted with a vehicle might have to resist the temptation to violate instructions and use it for a personal convenience. The Silver Fleet may, in this instance, have intrusted the truck to an unsuitable and untrustworthy employee, making it easy for him to cause the injury, and creating sympathy for the plaintiffs and a desire to see them succeed, but the court must not be swayed by the breach of a moral obligation, when this legal issue is not raised by the pleading.

On Saturday afternoon, May 24, the defendant Gallager left his work at 5:30, taking the truck to his home at 1014 East 14th Street, parking it in the street in front of his house, where, under the instructions of the company, it was to remain until Monday morning when he returned to his work at 7:00 A. M. On Sunday afternoon the defendant Gallager took the truck, drove down town, and got with a friend and had a couple of bottles of beer, according to his testimony. He and his friend returned to his home on 14th Street, and the defendant took a notion to go to his brother-in-law's who lived about half a square from Main and Kyle Street, and some blocks from his home on 14th Street. In driving down Main Street, approaching Kyle Street, his rate of speed was so excessive as to attract the attention of spectators nearby. Turning into Kyle Street he drove the truck about a half a block, stopping and backing for the purpose of parking, and he states that it was his purpose to back into a small ditch to prevent the car from getting away in his absence and running down grade into Main Street. While carrying out this operation he backed the truck into the automobile of the plaintiff which had driven up and stopped in the meanwhile.

Under this proven state of facts there is no doubt that the defendant Gallager was guilty of negligence, for the ordinance prohibits this movement without a lookout to see that the way is safe and that the vehicle can be backed without any injury. He was

intoxicated and unable to bring his truck under control after he discovered the perilous position of the plaintiff. His only defense is that his truck was standing still and the plaintiff's car ran into it, but this defense was wholly discredited by disinterested witnesses and his liability is clearly established from the record. He suffered no injury by the charge of the court, and even if the charge were not exactly accurate, yet it did not prejudice the issues in the eyes of the jury. The cases against him will be affirmed.

As for the defendant, The Silver Fleet Motor Express, the court cannot escape the conclusion that it is not liable. At the time of the accident the truck was being operated by the servant Gallager in his mission, and in violation of the express instructions of his employer, and from which operation the employer received no benefit. This case is ruled by a case of similar facts decided by this court and reported under the style of Etheridge Company v. Peterson, 19 Tenn. App. 530, 90 S. W. (2d) 957. Numerous authorities of this state and of other states are cited in support of the holding, which citations are readily available, and it is not necessary to again repeat them. This case and the cited case are to be distinguished from the case of Hall Grocery Co. v. Wall, 13 Tenn. App. 203, for in that case the servant was removing the truck to the parking place and while he was upon his journey the accident occurred which grew out of his negligence. He violated no instructions of his employer, but was carrying out his prescribed duties. In the instant case the truck had been removed and parked at the home of the defendant Gallager, where it was to remain until Monday morning, as the instructions provided, and had the instructions been carried out, and the truck permitted to remain parked upon the street at the home of Gallager, wherever his home might be, there would have been no accident by negligent operation on Sunday.

It is insisted that while his home was on 14th street, yet he was spending the week-end with his brother-in-law, and that his brother-in-law's home was his temporary home, and under the instructions of the company he had the right to park the truck at the home of his brother-in-law.

If this be true, the servant was unauthorized to operate the truck on Sunday from and to the home of his brother-in-law, as he was not from and to his own home. The negligent operation of the truck on Sunday, which was an unauthorized time, resulted in the damage, for the truck when parked might have been parked at either home to stand over Sunday, and could not have contributed to the injury, for if the truck had been standing still there would have been no collision. The plaintiffs had the automobile under control and it cannot be assumed that they would have negligently run into a parked truck.

It is next insisted that since it was proven that the truck was registered in the name of the defendant The Silver Fleet Motor Express the presumption arises under the statute that the servant was at the time operating the truck upon the master's business, and that this presumption has not been overthrown by the testimony of the defendant, and that it was a question for the jury to decide that it had not been overthrown. The defendant's testimony was discredited, but the manager of the corporation who corroborated the testimony of the defendant and detailed the company's operation and the instructions to its employees was in no way impeached. The jury did not have the right to discard the unimpeached testimony which corroborated the impeached witness and decide the case upon a presumption. Phillips-Buttorff Mfg. Co. v. McAlexander, 15 Tenn. App. 618.

And it is insisted that since it was the duty of the servant to guard the truck and see that nothing was stolen from it, that in the performance of this duty he had the right to take the truck around with him on his visit in order to more effectively carry out his duty and to prevent theft. It is argued that he was not required to stay at home and guard the truck over Sunday, and he testified that he was responsible for any stolen parts taken from it. This statement may be a mere conclusion on the part of the witness. If accurate he was performing more a duty for himself personally than for his employer; the employer had requested him to leave the truck parked at his home from the time he parked it there on Saturday night until Monday morning and he was not authorized to perform this service for his master, but if he took the truck for the purpose of guarding it, in violation of instructions, then the hazard to the master was increased. If the court lays down the rule that the servant was on a mission of the master in taking the car with him to guard it while on a mission for himself, then it is difficult to see how the master can ever escape liability when a servant driving his master's car steps aside from his duty and enters upon a mission of his own. The servant is always the custodian of the car when alone and is expected to protect it; this circumstance appears to be found in all the cases upon the subject that have been long since decided.

The court's charge to the jury casts the burden upon the employer to anticipate that his servant might step aside from his duty and enter upon a mission of his own, and without further elaboration, the court states, in its opinion this requirement is in violation of the announced principle. The master can even consent to the servant's use of the car in his own business without incurring liability for the servant's negligence while engaged in a mission of his own. Etheridge Company v. Peterson, supra.

The trial court committed error in declining to sustain the mo-

250

tion for a directed verdict filed by the defendant The Silver Fleet Motor Express and the assignment of error is sustained, and the case reversed as to this defendant. The plaintiff-in-error Gallager will pay one-half the cost of the appeal and the other half will be paid by the defendant in error.

Ailor and and McAmis, JJ., concur.